THE parties are hereinafter referred to as they appeared in the trial court where defendant in error was plaintiff and plaintiff in error was defendant.
The Colorado tax commission, original assessor of public utilities in this state, fixed the valuation for taxation of plaintiff's railroad property. The state board of equalization at its October, 1927, meeting, increased this amount. Plaintiff paid on the increased valuation and brought this action to recover the excess. It and other railroads had a similar experience in other counties. The amici curiae here appearing represent some of those plaintiffs in said suits. Judgment below was entered on the pleadings for plaintiff and defendant brings error.
The principal question raised by this record is the correct interpretation of certain language in section 15, article X of our Constitution, which originally read: *Page 112 
"There shall be a state board of equalization, consisting of the governor, state auditor, state treasurer, secretary of state and attorney general, also, in each county of this state, a county board of equalization, consisting of the board of county commissioners of said county. The duty of the state board of equalization shall be to adjust and equalize the valuation of real and personal property among the several counties of the state. The duty of the county board of equalization shall be to adjust and equalize the valuation of real and personal property within their respective counties. Each board shall also perform such other duties as may be prescribed by law."
By an amendment adopted November 3, 1914, this section was made to read: "There shall be a board of equalization for the state, consisting of the governor, state auditor, state treasurer, secretary of state and attorney general. The duty of the said board of equalization shall be to adjust, equalize, raise or lower the valuation of real and personal property of the several counties of the state, and the valuation of any item or items of the various classes of such property.
"There shall be in each county of this state a county board of equalization consisting of the board of county commissioners of said county. The duty of the county board of equalization shall be to adjust, equalize, raise or lower the valuation of real and personal property within their respective counties, subject to revision, change and amendment by the state board of equalization. The state board of equalization and the county board of equalization shall equalize to the end that all taxable property in the state shall be assessed at its full cash value and also perform such other duties as may be prescribed by law; Provided, however, That the state board of equalization shall have no power of original assessment."
Prior to 1911, it was the duty of the state board of equalization to make the original assessment of the *Page 113 
property of railway companies. § 7284, C. L. 1921. In that year the act creating the Colorado tax commission was passed (§ 7322, C. L. 1921), and it was given a general supervision of all the taxing authorities of the state save the state board of equalization. § 7334, C. L. 1921. In 1913 the following section was adopted: "All statutory powers, duties and privileges heretofore exercised by the state board of equalization are hereby conferred upon the Colorado tax commission and in addition thereto it shall be the duty of the Colorado tax commission to exercise all powers of original assessment of all public utility corporations as herein defined." § 7361, C. L. 1921.
While the board of equalization in the instant case simply made a flat increase in the total assessment for taxes of a single taxpayer, it will be observed that said section 15 of article X, as amended, makes no specific reference to "personal" or "individual" assessment or "item of property." The language is "property of the several counties" and "item or items of the various classes of such property."
But two authorities, directly interpreting this language, are called to our attention. Defendants rely upon People v. Pitcher, 61 Colo. 149, 168, 156 P. 812, wherein we said: "The State Board of Equalization is the final arbiter in fixing values upon property which has been originally assessed for the purposes of raising public revenue. * * * The County Board of Equalization is now expressly authorized to raise or lower the valuation of any property, and the State Board is not only authorized to `revise, change and amend the action of the County Board' but also to raise or lower `any item or items of the various classes' of such property. Clearly items of a class may include the whole class, and if a board is given power to act with reference to any item of a class or items of classes, it possesses the power to act with reference to the whole class. The conclusion is, therefore, inevitable that the State Board of Equalization may raise the assessment upon property, or any *Page 114 
part, parcel or class thereof which has been originally assessed for the year, by any of the agencies authorized to make such assessments, to its full cash value, since, otherwise, it has not performed its constitutional duty."
[1] If the conclusion thus stated is accepted at its face the state board of equalization would be authorized to raise the individual assessment of any taxpayer or the valuation of any item of property. No such conclusion, however, "inevitably" follows from the preceding quotations and argument, because they make no reference to individual assessments or items of property. Moreover, such a decision in the Pitcher case would be dictum since the entire dispute there concerned classes and items of classes, i. e., "improved land," "improvements on improved land," "town and city lots," "improvements on lots," "clocks and watches," "money invested in merchandise," "capital in manufacture," "household property," "libraries," etc. Hence it seems clear to us that the question now under consideration was not decided in the Pitcher case. It is a well recognized and essential rule of constitutional and statutory construction that interpretation leading to absurdities and impossibilities will, if possible, be avoided. If the state board of equalization is charged with the ultimate duty of approving the valuation of every item of property in the state, and the total assessment of every taxpayer, its five members would have to live long and labor diligently to complete the work of a single year. The fact is that the state board is required to meet on the first Monday of October (§ 7463, C. L. 1921) and complete its work on or before the third Monday of the same month (§ 7465, C. L. 1921).
[2] The other case cited, which is relied upon by the plaintiff, is Union Pacific R. Co. v. Board of CountyCommissioners, 35 F.2d 785, which disposes of three appeals from the United States District Court of Colorado. Each of these actions was, in all its essential facts, identical with this, and the questions there presented were the same. In the opinion disposing of those cases *Page 115 
the United States Circuit Court of Appeals for the Tenth Circuit cites all the constitutional and statutory provisions necessarily involved in the controversy. Judge Phillips, speaking there for the court, concludes: "While the broad language of the Supreme Court of Colorado, in People v. Pitcher, supra, tends to support the contention of the defendants, the holding of the court in that case went only to the extent of sustaining an order which raised the valuation of classes and sub-classes of property, and we do not think the court, by the language there employed, intended to hold that the state board of equalization, under its constitutional power, was authorized and required to examine into the valuation of the property of individual taxpayers. * * * It follows, therefore, that the orders complained of were not within the power of the state board of equalization and were void." Id. 790. With all this, and with the reasoning of the court leading up to these conclusions, we agree. Such being the case a more minute examination of this record and of the authorities cited by counsel would seem superfluous. We also agree that if a contrary conclusion were reached "a grave question" would be presented under the Fourteenth Amendment to the Constitution of the United States, the decision of which would ultimately rest with the United States Supreme Court. We reach this conclusion the less reluctantly because any other would lead to an anomalous situation in this state. The interpretation of said section 15, article X, adopted by the Circuit Court of Appeals in the Union Pacific case, supra, will doubtless remain the rule of the federal courts unless reversed at some future date in an appropriate proceeding by the Supreme Court of the United States. What that court will do when, if ever, the question reaches it, is at least suggested by the subsequent history of the Union Pacific case. An attempt was made to have it reviewed there by petition for writ of certiorari which petition was dismissed by that court March 17, 1930. Board of County Commissioners v. Union Pacific *Page 116 Railroad Co., 281 U.S. 734, 74 L. Ed. 1149,50 Sup. Ct. 249.
[3] The rules of the United States Supreme Court provide that such a writ may be sustained "when a circuit court of appeals * * * has decided an important question of local law * * * in conflict with applicable local decisions." It follows that we might have a period in Colorado during which, in cases cognizable only by the state courts, said section 15 of article X would mean one thing, and in cases cognizable by the federal courts another. So that the state board of equalization before acting, or refusing to act, would first be obliged to ascertain whether state or federal courts would have jurisdiction. Such a contingency is of course not a controlling factor here, not is the decision of the Circuit Court of Appeals in the Union Pacific case, supra, binding. But in case of doubt the contingency adds to the persuasive force of the decision.
For the reasons given the judgment is affirmed.
MR. JUSTICE HILLIARD not participating.