## No. 12,992.

MacGinnis, Auditor et al. *v*. Denver Land Company.

(6 P. [2d] 919)

Decided December 19, 1931.

Mr. Clarence L. Ireland, Attorney General, Mr. Fred A. Harrison, Deputy, Mr. John R. Wolff, Mr. Thomas A. Nixon, for plaintiffs in error.

Messrs. Grant, Ellis, Shafroth & Toll, for defendant in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

The Denver Land Company, a corporation, defendant in error, hereinafter referred to as plaintiff, brought an action in the district court to secure a permanent injunction enjoining William D. MacGinnis, auditor of the state of Colorado, and John E. Davidson, secretary of the state board of equalization, plaintiffs in error, hereinafter referred to as defendants, from certifying and transmitting to the several county assessors and other county officials in Colorado a resolution of the state board of equalization adopted and approved on October 19, 1931, on the ground that the resolution of the state board of equalization was void. A temporary restraining order was issued and, upon trial, the court issued a permanant injunction as prayed by plaintiff. Defendants prosecute this writ assigning as error the action of the court in granting its injunction, because the resolution was valid and within the power and jurisdiction of the state board of equalization.

The state board of equalization, consisting of five designated elective officials, is created by section 15, ar-

ticle 10, of the Constitution of the state of Colorado, and its duty, as therein defined, is to adjust, equalize, raise and lower the valuation of real and personal property of the several counties, and the valuation of any item or items of the various classes of property, to the end that all taxable property within the state shall be assessed at its full cash value; but the board is expressly prohibited from making original assessments. Section 7463, C. L. 1921, provides that the state board shall meet on the first Monday in October, in each year, for the purpose of examining, adjusting and equalizing the assessments in the several counties in the state. Section 7465, C. L. 1921, provides that the state board must complete its equalization on or before the third Monday in October in each year, and that the state auditor shall transmit to the county clerks of the several counties a statement of the changes, if any, made in the assessments. Section 7351, C. L. 1921, provides that county assessors shall, on or before the first Monday in September, in each year, make and transmit to the state tax commission an abstract of the real and personal property in his county, and the value thereof. Section 7352, C. L. 1921, provides that the state tax commission shall, on or before the first day of October, in each year, determine whether the taxable property in each county has been assessed at its full cash value, and if not, the state commission shall determine the percentage, or the amount necessary to be added or subtracted, which will place the taxable property on the assessment rolls at its full cash value.

Section 7353, C. L. 1921, provides that when the state tax commission has determined the true value of the taxable property in the several counties, it shall transmit to the state board of equalization a statement of the amount to be added to or subtracted from the valuations of each county. Section 7354, C. L. 1921, provides that the state board of equalization shall examine the abstracts of assessment, as submitted by the state tax commission, and shall examine the abstracts of assessment of each county,

as submitted by the state tax commission, and make a record of its action on the abstract of each county and certify the same to the county assessor. The resolution, of which plaintiff complains, was adopted on or before the third Monday in October, 1931, but the original abstracts of assessment, prepared by the several county assessors, were not before the state board of equalization. The state board of equalization did not make the record on the abstract of each county, and the state auditor did not transmit to the county clerks the changes made in the assessments, in the various counties, on or before the third Monday in October, 1931.

The undisputed evidence is that the state board of equalization had before it certain "comparative sheets" prepared for its use by the state tax commission from the several abstracts of assessment returned by the county assessors, and that these comparative sheets were full, complete and accurate, and were transcripts taken from the original abstracts of assessment of the various county assessors, as the same were filed in the office of the state tax commission, and they contained all the detailed information necessary for the state board's consideration in the performance of its duties. It is also undisputed that the state board did not make and has not made, as yet, any record of its action on the abstract of assessment of each county, and that the state auditor did not, on or before the third Monday in October, 1931, transmit to the several county clerks a statement of the changes made by the state board in the assessments in their counties.

 Plaintiff contends that the above provisions are mandatory, and that by reason of the failure to comply with the provisions of the statutes, the resolution became void; while defendants contend that if the provisions of the statutes are as contended for by plaintiff, the statutes are nevertheless directory, and a failure to comply therewith is not fatal. Plaintiff makes no attempt to show that it was prejudiced or injured by the state

board's failure to adopt its construction of the statutes. In *Tallon v. Vindicator Co.,* 59 Colo. 316, 328, 149 Pac. 108, approved in *Colorado & So. Ry. Co. v. Boulder County Commissioners,* 70 Colo. 8, 11, 196 Pac. 331, and also in *People v. Pitcher,* 61 Colo. 149, 174, 156 Pac. 812, Ann. Cas. 1918D, 1185, the rule was announced that whether a statute prescribing the preliminaries incident to the levy of taxes is mandatory or directory, depends upon whether the particular provisions are for the benefit of the taxpayer, and that a statute prescribing the time of levy or the delivery of the tax warrant is not mandatory but directory, and a failure, under these circumstances, to observe statutory requirements is a matter of which the taxpayer cannot complain. Upon principle and reason the rule therein announced is applicable to the facts in this case, and the resolution was not void by any such action or inaction of the state board of equalization or its members.

The resolution adopted by the state board of equalization, the validity of which is challenged, is:

"It was moved by Secretary of State Armstrong that the board order a reduction of 20% on the valuation of all farm lands primarily used for agriculture and grazing, and that this reduction be based on the valuation placed thereon for the year 1930." (Unanimously carried.)

"It was moved by Secretary of State Armstrong that the board order a reduction of 20% on the valuation for assessment purposes of all improvements on agricultural and grazing lands except improvements used for manufacturing or mercantile purposes, which said improvements are hereby reduced by 5% from the 1931 valuations." (Unanimously carried.)

"It was moved by State Auditor MacGinnis that the valuation for assessment purposes of all city and town lots and improvements thereon be reduced 5% under the assessed valuations as certified by the county assessors for the year 1931." (Unanimously carried.)

Plaintiff's position in the trial court was that the resolution was void because: (a) It was indefinite and uncertain and practically required a reassessment, and (b) it constituted an original assessment of farm lands. The trial court sustained plaintiff in its position.

It is fundamental that if the resolution of the state board of equalization is susceptible of two interpretations, one supporting its validity, the other destroying it, clearly our duty requires us to adopt and give full force and effect to the former rather than the latter. It is also equally fundamental that that is sufficiently certain which can be made certain.

At the outset, in the absence of proof to the contrary, we must presume that the state board of equalization fully performed and discharged its entire duty with reference to an equalization, adjustment, increase and decrease in the assessments of the various counties of the state in 1930, which leads to the inevitable conclusion that the 1930 abstracts of assessment in the several counties of the state represented an equalized value in 1930. Section 15, article 10, of our Constitution provides, inter alia, that the state board of equalization shall concern itself with "the valuation of any item or items of the various classes of such property." This has been held to prohibit the state board from examining into the valuation of the property of an individual taxpayer. *Union Pacific v. Board,* 35 Fed. (2d) 785; *Board v. Union Pacific,* 89 Colo. 110, 299 Pac. 1055. Therefore, nothing contrary appearing, we must assume that the state board, in passing the resolution of which complaint is made, was dealing with aggregate values of classes of property rather than otherwise, and this cannot be deemed an act of original assessment. The 1930 equalization, as made by the state board, is not and cannot be questioned here, so that it must be assumed that the state board, in adopting said resolution, determined it with reference to the 1931 abstracts of assessment, and that the reference to the 1930 assessment and valuation, in the resolution in

question, was for the purpose of using it as a standard for equalizing, adjusting, raising and lowering the valuations of the various items or classes, as the same appeared in the abstracts of assessment from the various assessors in the several counties in the state for the year 1931. This method of utilizing the 1930 abstracts of assessment, as a standard for equalizing the 1931 valuations, is not prohibited by any statute to which our attention has been directed, and so far as we are informed on the subject, our statutes are silent as to any method or methods to be used by the state board of equalization in the performance of its constitutional duties.

In *People v. Pitcher,* 61 Colo. 149, the state board of equalization ordered the commissioner of finance and ex officio assessor of the City and County of Denver to raise his valuations on certain items of property, specifically setting forth the items and the amount of the increase, as illustrated by the following:

```
"Improved land...........................$ 840,376
 Imp. on improved land.................... 547,171
 Town and city lots....................... 25,548,128
 Imp. on lots............................. 20,549,953
 * * *,,
```

The court, in *People v. Pitcher, supra,* upheld the order of the state board of equalization and compelled the commissioner of finance to make the additions to his valuations, in accordance with the mandate of the state board. It is to be assumed that the commissioner of finance, in increasing his valuations, complied with the provisions of section 7354, C. L. 1921, which requires the increased or decreased valuation to be proportionately made on the property affected by the state board's order.

Let us now apply the resolution under question to the abstract of assessment filed with the state tax commission by the county assessor of Mesa county, and appearing as an exhibit herein. The farm lands, classification

and values thereof, as appear from the abstract, are as follows:

| Land classifications. | 1930 value. | 1931 value. |
|---|---|---|
| Improved fruit land, | $1,197,880 | $ 986,170 |
| Irrigated land, | 6,419,650 | 4,328,890 |
| Orchard land, | . . . . . . . . | 236,490 |
| Dry farming land, | . . . . . . . . | 1,919,245 |
| Grazing land, | 1,672,580 | 1,661,205 |
| Suburban tracts, | 125,610 | 132,195 |
| Mountain home sites, | . . . . . . . . | 21,700 |
| Total | $9,415,720 | $9,285,895 |

The resolution of the state board of equalization is that the reduction of 20% be based on the 1930 valuations which, in effect, is an order to the county assessor to reduce his farm land values to 80% of the 1930 equalized valuations, and that this amount shall be the equalized valuation of all the farm lands for the year 1931. Mathematically, this order can be effectuated in this manner: 80% of $9,415,720 (the valuation of farm lands for 1930) is $7,532,576, which sum is the equalized valuation of all farm lands in Mesa county for the year 1931. $9,285,895 (1931 valuations as returned by assessor) minus $7,532,-576 (1931 equalized valuation of farm lands) equals $1,753,319, which is the amount by which the county assessor is to reduce his valuations for the year 1931. Section 7354, C. L. 1921, requires the county assessor to reduce his valuations by applicable percentages so that in order to find the percentage by which the assessor's 1931 valuations shall be reduced, 1,753,319 is divided by 9,285,895 which gives the percentage as 18.88% plus, which the assessor must use as his ratio of reduction on all of the farm land valuations appearing in the 1931 abstract. Applying this percentage of reduction to the above classified lands, we have for their approximate equalized valuation in 1931:

| | 1931 equalized |
| Land classification. | valuation. |
| Improved fruit land, | $ 799,981.10 |
| Irrigated land, | 3,511,595.56 |
| Orchard land, | 191,840.68 |
| Dry farming land, | 1,556,891.54 |
| Grazing land, | 1,347,569.49 |
| Suburban tracts, | 107,236.58 |
| Mountain home sites, | 17,603.04 |
| Total | $7,532,717.99 |

The result reached in the illustration by the application of our interpretation of the resolution to the abstract of assessment in Mesa county, clearly convinces us that the only difference between this case and the Pitcher case, supra, is one of mathematics. In the Pitcher case, the amounts were specified; in the instant case, one must make his calculations from a definite point. The Pitcher case, supra, is exceptionally well reasoned, is legally correct, and we approve of it and find that its application to the case under consideration obviates the necessity of a lengthy discussion of some of the principles common to both cases.

The practical application and effect of this resolution, whether it be to increase or decrease taxes on certain classes of property in various individual instances and in different counties, are matters beyond our control. For aught that appears here, the adoption of the resolution was clearly within the province and jurisdiction of the state board of equalization; it was a proper exercise of the power vested in the board by the Constitution of our state, and the results of the resolution, in the judgment of the state board, is an equalization of taxes in the various counties of the state. Our Constitution vests this state board with certain powers, and so long as these are legally exercised, courts are powerless to control the results, even though it may well be that there are other

methods by which the desired result could be better accomplished, for to do so would be a substitution of our judgment for that of those clothed by the Constitution with the responsibility.

The foregoing conclusion obviates the necessity of considering other interesting questions raised by plaintiff.

The judgment is accordingly reversed and the cause is remanded with instructions to the district court to vacate its injunctive order, and dismiss the action at the costs of the Denver Land Company, defendant in error.