MAX FROMKIN, PLAINTIFF, V. STATE OF NEBRASKA ET AL., DEFENDANTS, MID-CONTINENT INVESTMENT COMPANY, A CORPORATION, INTERVENER.

63 N. W. 2d 332

Filed March 12, 1954. No. 33507.

*Max Fromkin,* pro se.

*Clarence S. Beck,* Attorney General, *C. C. Sheldon, Eugene F. Fitzgerald, August Ross, W. Ross King, Edward F. Fogarty, Wells, Martin & Lane, Herbert M. Fitle, Neal H. Hilmes,* and *Theodore L. Richling,* for defendants.

*White, Lipp & Simon,* for interveners.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an original action to secure a declaratory judgment.

The plaintiff brings the action as a taxpayer owning real estate representing himself and all other taxpayers similarly situated.

Plaintiff sought a judgment that a resolution of the Douglas County Board of Equalization of July 7, 1953, was null and void and that the lawful assessment of property in Douglas County was as found and fixed by the county assessor as of March 10, 1953. The County Board of Equalization will be referred to herein as the county board.

Mid-Continent Investment Company, as the owner of real estate, was given leave to intervene. It also sought a judgment that the resolution of July 7, 1953, was void.

The defendants are the State, the County of Douglas, the City of Omaha, the Douglas County Board of Equalization, the State Board of Equalization and Assessment, and various state and county officials, villages, and school districts of Douglas County.

The State Board of Equalization and Assessment will herein be referred to as the state board.

The answering defendants take the position that the resolution of July 7, 1953, is in all respects valid and proper and that the action of the state board is likewise valid and proper.

The matter is submitted here on a stipulation of facts.

The county assessor of Douglas County made an assessment of all real property subject to taxation as of March 10, 1953, and filed the same with the county clerk on May 18, 1953. See § 77-1315, R. S. Supp., 1953. The county board convened on May 18, 1953, and between that date and July 7, 1953, met a total of 24 days.

The county board on July 7, 1953, passed a resolution reciting that it was necessary to effect an equalization of the actual and assessed value of real and personal

property in the county and of real estate within some precincts as compared with other precincts. It then increased the actual and assessed value of real estate by precincts by percentages varying from 100 to 140 percent. This action was taken without notice to property owners and was not based on any complaint filed as to the valuation of any individual parcel of real estate. The abstract of assessments of Douglas County was not prepared by the county assessor prior to this resolution. It was prepared thereafter and forwarded to and received by the state board on July 27, 1953.

The state board on July 27, 1953, in order to make the assessment, as returned by the individual counties, conform to law and to arrive at a just, equitable, and legal assessment of the real and personal property in the state found that increases and decreases in the assessed value as returned by the counties should be made.

As to Douglas County it found that the actual value of "Land & Improvements" as shown by the 1953 abstract was $35,544,920. It determined the actual value to be $42,653,900. The assessed value was determined to be $21,326,950. The board determined that the percentage of increase was 20 percent. As to "Lots & Improvements" the actual value as shown on the 1953 abstract was $545,507,455. It determined the actual value to be $807,351,030. The assessed value was determined to be $403,675,515. The board determined that the percentage of increase was 48 percent.

The plaintiff and intervener challenge the validity of the resolution of July 7, 1953, and the increased assessments based thereon. The defendants assert the validity of that resolution and also assert the validity of the action of the state board in equalizing assessments and determining values on July 27, 1953.

We determine that the resolution of July 7, 1953, was void. We also determine that the action of the state board of July 27, 1953, in determining values, was valid

in all respects. We determine certain procedures which are required to be taken in the matter.

The first question presented here is the power of the county board to make the equalization which was here attempted on July 7, 1953.

The applicable statute is: "The county board of equalization shall hold a session of not less than three and not more than forty days, for the purpose contemplated in sections 77-1502 to 77-1507, commencing on the third Monday of May each year. It shall be authorized and empowered to meet at any time upon the call of the chairman or any three members of the board for the purpose of equalizing assessments of any omitted or undervalued property. The board shall maintain a written record of all proceedings and actions taken, which shall be available for inspection in the office of the county assessor." § 77-1502, R. S. Supp., 1953.

It is stipulated here that the county board met pursuant to this act on May 18, 1953, being the third Monday of May 1953. Thereafter it did not meet in continuous session; but between the period of May 18 and July 7, 1953, it met a total of 24 days. Obviously, the period between May 18, 1953, and July 7, 1953, is more than 40 days.

In our decisions in Farmers Co-operative Creamery & Supply Co. v. McDonald, 97 Neb. 510, 150 N. W. 640, on rehearing 97 Neb. 512, 150 N. W. 656, same title 100 Neb. 33, 158 N. W. 369; Hiller v. Unitt, 113 Neb. 612, 204 N. W. 208; and Missouri P. R. R. Corporation v. Board of Equalization, 114 Neb. 84, 206 N. W. 150, we had this same question before us under the statutes as they existed at that time. The contention was there made that the time should be calculated on an elapsed-time basis. We there held in effect that the 20-day period was not required to be calculated on a continuous-time basis but rather on a calculation of days when the board was actually in session. It was further held in those cases that jurisdiction to exercise its powers ter-

minated on the date the county assessor was required to have the abstract of the assessment rolls completed and forwarded to the state board. At that time the date was "on or before the tenth day of July." It is now "on or before July 1." § 77-1514, R. R. S. 1943. See, also, State v. Odd Fellows Hall Assn., 123 Neb. 440, 243 N. W. 616.

A study of those cases discloses that the conclusion there announced was reached because of the provisions of the act which gave the county board power to adjourn from time to time until the action of the state board was had and certified to the county clerk. By construction we held that the county board had jurisdiction until the date the abstract of assessment was to be sent to the state board.

In Hiller v. Unitt, *supra,* we recognized that the argument for a calculation on an elapsed-time basis was "persuasive," but adhered to our previous decisions.

However, since that time the statutes have been materially amended.

The provision for the county board to hold a session for not less than 3 nor more than 20 days became section 77-1502, R. S. 1943. The provision for adjournment from time to time became section 77-1601, R. S. 1943.

In 1947, the Legislature amended section 77-1502, R. S. 1943, so as to provide for a session of not less than 3 nor more than 50 days commencing on the first Monday of May of each year and added this sentence: "It shall be authorized and empowered to meet at any time upon the call of the chairman or any three members of the board for *purposes of reviewing and equalizing all assessments.*" Laws 1947, c. 251, § 36, p. 826. The same Legislature earlier in its session having re-enacted section 77-1601, R. S. 1943, so far as the provision for adjournment from time to time was concerned (Laws 1947, c. 250, § 30, p. 799), later reenacted section 77-1601, R. S. 1943, with that provision deleted (Laws 1947, c. 251, § 40, p. 828). It also provided that the abstract of as-

sessment should be forwarded to the state board on or before July 1. Laws 1947, c. 251, § 39, p. 827.

The 1949 Legislature amended section 77-1502, R. S. Supp., 1947, by changing the sentence above quoted ·so as to read: "It shall be authorized and empowered to meet at any time upon the call of the chairman or any three members of. the board for the *purpose of equalizing assessments of any omitted or undervalued property."* Laws 1949, c. 233, § 1, p. 644.

The 1953 Legislature enacted the provision now applicable by amending section 77-1502, R. R. S. 1943, so as to reduce the 50-day period to 40 days and to fix the beginning of the session the third Monday of May instead of the first Monday in May. Laws 1953, c. 274, § 1, p. 899.

So, as the act now stands the provision has been repealed which authorized adjournment from time to time. This provision as above pointed out was the foundation reason for our decisions that the 20-day period then in force was not a continuous-time session. That 20 days has now been extended to 40 days. The power to meet at any time is now limited to the purpose of equalizing assessments of any omitted or undervalued property.

Under the provisions of section 77-1601, R. S. Supp., 1953, the county board is to meet between August 2 and August 10 and levy taxes for the current year. As above pointed out the county board also is authorized to meet at any time "for the purpose of equalizing assessments of any omitted or undervalued property." § 77-1502, R. S. Supp., 1953. Accordingly, it is argued here that although the power of adjournment, specifically given, has been repealed, nevertheless the board has the implied power of adjournment and hence the power to act as it did here continues until action has been taken on the equalization made by the state board.

We see no merit in that contention. The question here is not the power of the county board to meet but

the power of the county board to do what it did here at the time it acted.

The provisions of section 77-1502, R. S. Supp., 1953, provide for "a session" of the county board of equalization of not less than 3 nor more than 40 days. The period of days defines the minimum and maximum term in days of a session. The statute contemplates one session to begin and end as provided in the act. Once started the time continues to run. The time limited in the act constitutes the term during which the county board can act for the purposes stated.

It is recognized that under the provisions of section 77-1514, R. R. S. 1943, the county assessor is required to prepare an abstract of the assessment rolls of his county "not later than June 25 of each year" and that under certain circumstances a period of 40 days cannot elapse between the "third Monday of May" (section 77-1502, R. S. Supp., 1953) and June 25. However, a 40-day maximum period will have elapsed in any event between the third Monday of May of any year and July 1, the date fixed for forwarding the abstract to the state board under the "on or before July 1" provision. The provision with reference to preparation of the abstract not later than June 25 was placed in the act by amendment in 1947. See Laws 1947, c. 251, § 39, p. 827. The question as to whether the June 25 provision has the effect of shortening the maximum 40-day period under some circumstances need not be determined here for obviously a 40-day period had fully elapsed between May 18, 1953, and July 7, 1953.

There remains for determination the question as to whether or not the power of the county board to "meet at any time" upon call "for the purpose of equalizing assessments of any omitted or undervalued property" authorizes the action which is here questioned.

Section 77-518, R. R. S. 1943, provides that the county assessor "may, at any time, add to the tax rolls any property omitted therefrom for the current year." See,

also, § 77-1507, R. R. S. 1943. Obviously, the power of the county board to equalize assessments of omitted property is a necessary act with reference to omitted property assessed subsequent to the regular time. Just as obviously, this statute refers to specific items and parcels of property.

The scope of the power as to equalizing as to "undervalued property" is not as definite. Obviously, it refers to property that has been assessed.

Sections 77-1503, 77-1504, and 77-1506, R. R. S. 1943, provide for the equalizing of the value of real and personal property. The county board did not purport to act under these provisions. It did attempt to act under the provisions of section 77-1505, R. R. S. 1943, and to exercise a power to increase the "aggregate valuation" of property by precincts.

The Legislature used the one word property. It used the qualifying words "omitted" and "undervalued" to define categories of property within the class of specific items and parcels of property.

The power given in section 77-1502, R. S. Supp., 1953, authorizing equalization of undervalued property, is limited to particular items and pieces of property. It does not extend to any equalization of aggregate values between taxing districts.

It necessarily follows that the action of the county board of July 7, 1953, came at a time when its power to act in the manner attempted had expired and its action was without authority and was void.

The resolution of July 7, 1953, was one which "raised * * * the actual and assessed valuations of the real estate as shown by the assessor of Douglas County." It follows that the amounts of the actual and assessed valuations of real estate as fixed by the assessor are determined amounts or amounts readily determinable by a clerical calculation.

It becomes the duty of the county assessor under the provisions of section 77-1514, R. R. S. 1943, to put aside

the resolution of July 7, 1953, and prepare and forward to the state board an abstract of the assessment rolls based on his revision of the assessment rolls, schedules; lists, and returns as prepared and filed under the provisions of section 77-1315, R. S. Supp., 1953, showing the values as equalized and corrected by the county board if any were validly made. As above pointed out there is no showing here of any such changes having been made. The language of the resolution of July 7, 1953, negatives any such conclusion. As above pointed out the statute contemplates that this abstract of assessment rolls shall be prepared and forwarded to the state board on or before July 1. However, that is not a deadline that invalidates a subsequent preparation and filing, for section 77-511, R. R. S. 1943, provides a method whereby the state board is empowered to secure the abstract of the assessment rolls where the county assessor has failed to transmit it and section 77-1515, R. R. S. 1943, fixes a penalty for his refusal or neglect to do so. The fact that the county board had no power, at the time it acted, to raise the values as fixed by the assessor does not affect the duty or power of the state board. See People v. Pitcher, 61 Colo. 149, 156 P. 812, Ann. Cas. 1918D 1185.

This brings us to the order of the state board of July 27, 1953. Does the percentage of increases, which the state board fixed, control or does the actual value as adjusted by the state board and the assessed value as equalized by the state board in dollar figures control? The State and certain other of the defendants contend that the actual and assessed value as fixed by the state board control, and that the percentage of increase is in error, but that it is a matter of mathematical calculation and subject to correction.

Under the provisions of section 77-506, R. R. S. 1943, the state board is given the broad "power to increase or decrease the assessed valuation of real or personal property of any county or tax district" for the purpose of equalizing assessments so as to make the same conform

to law. Section 77-507, R. R. S. 1943, gives the state board the broad "power, in equalizing assessments, to increase or decrease the assessed valuation of any class, classes or kinds of property, personal, real, or mixed in any county or tax district, whenever in their judgment it shall be necessary to make such assessment conform to law." Sections 77-508, 77-509, and 77-510, R. R. S. 1943, all refer to "valuation" of property in the determination and proceedings of the board. In this instance the state board made a specific determination of actual value and assessed value of various classes of property in Douglas County. It is not claimed that there is error in that determination.

"The board is not under the statute required to enter into a formal judicial investigation of the values of property to be affected by its action in the discharge of its duties as a board of equalization. It is its duty under the law to adjust and equalize the valuation of real and personal property in the different counties by a per centum of increase or decrease of the aggregate valuation of the county, with the view of apportioning equitably the burden of state government, and, in doing so, each member acts upon his own knowledge of the facts and without requiring other evidence. The fact that valuations are increased or decreased in any one county without the examination of witnesses is immaterial. When the board has before it the abstracts of assessment of the different counties, such as are required to be formulated and furnished for its information under the law, it is in a position to proceed in the discharge of its duties pertaining to the equalization of assessments of the different counties, and is authorized to act upon such infromation (sic) and the knowledge of its members as to values of property generally, without further or different information or greater formality." Hacker v. Howe, 72 Neb. 385, 101 N. W. 255.

"The statute above quoted does not require any particular kind nor standard of evidence. The method to

be used is left to the discretion of the state board. 61 C. J. 752. No formal hearing is required. In addition to the evidence mentioned in the record, the state board may take into consideration matters within the general knowledge of its members." Boyd. County v. State Board of Equalization & Assessment, 138 Neb. 896, 296 N. W. 152.

In the above cases the state board had before it assessment rolls from the county assessor whose validity was not questioned. Here the state board had before it an assessment roll containing valuations based upon a void order of the county board, but nevertheless the assessment roll expressed the judgment of the county board as to valuations. The assessment roll was before the board as we said in the Hacker case "for its information." The state board had the right to consider that, and in addition thereto whatever matters were before it and in addition thereto may consider "matters within the general knowledge of its members" as we said in the Boyd County case. This does not mean that the state board has unlimited power to exercise its discretion. It is subject to the fundamental rule that if there be evidence before the state board which demonstrates that the order made was an arbitrary one, this court will on appeal set it aside. Laflin v. State Board of Equalization & Assessment, 156 Neb. 427, 56 N. W. 2d 469.

It follows that the determination by the state board of the actual and assessed values of the various classes of property in Douglas County is not, in a legal sense, affected by the void order of the county board.

It follows that two determinations involving discretion have been made, i.e., the actual and assessed value of the classes of property as made by the county assessor and the valuations made by the state board. As was said in People v. Pitcher, *supra:* "The ascertainment of the ultimate fact that all the property of the state has been brought, for taxation purposes, to its full cash

value rests on the judgment of the State Board of Equalization, not on the judgment of the judiciary."

Section 77-506, R. R. S. 1943, provides that "Such increase or decrease shall be made by a per cent, and the per cent of increase or decrease when made shall be certified to the county clerk of the proper county, who shall thereupon add to or deduct from the assessment of each item of personal property and of each piece or parcel of property in the county affected an amount equal to the per cent of increase or decrease fixed by the board." Section 77-507, R. R. S. 1943, provides for the method to be followed by the county clerk in extending the increase or decrease upon the tax rolls.

It is assumed by the parties here that the percent of increase as fixed by the state board is in error because calculated upon the values as shown by the assessor's abstract, which in turn appears to reflect the increases ordered by the county board on July 7, 1953. That, however, if an erroneous figure, is a matter of mathematics. The correct percentage can readily be calculated from the known or determinable totals fixed by the assessor and the known totals fixed by the state board. It is not an act involving the exercise of discretion. See MacGinnis v. Denver Land Co., 90 Colo. 72, 6 P. 2d 919.

Section 77-505, R. R. S. 1943, provides that the state board shall meet on the first Monday of July of each year for the purpose of equalizing assessments. Section 77-511, R. R. S. 1943, provides that the state board "shall have power to adjourn from time to time until the equalization shall be completed." Section 77-503, R. R. S. 1943, provides that the Tax Commissioner shall have authority to call special meetings of the state board at such times as its business may require.

As above determined it becomes the duty of the county assessor to prepare and forward to the state board an abstract of the assessment rolls setting out the information required by section 77-1514, R. R. S. 1943. It be-

comes the duty of the Tax Commissioner to call a meeting of the state board. It becomes the duty of the state board to meet and, if the county assessor has not forwarded the abstract of the assessment rolls, to send for and secure an abstract of the assessment rolls as provided in section 77-511, R. R. S. 1943. It then becomes the duty of the state board to calculate the percent of increase in the assessed valuation of the various classes of property in Douglas County involved in this action so as to bring the total of the assessed value to that determined by the state board in its action of July 27, 1953. It then becomes the duty of the state board to certify that percent of increase to the county clerk of Douglas County, and the duty of the county clerk to extend the same upon the tax rolls by adding to the assessment an amount equal to the percent of increase fixed by the state board, as provided in sections 77-506 and 77-507, R. R. S. 1943.

This determines the issues presented by the parties in this proceeding. Costs are taxed to plaintiff and intervener.

JUDGMENT ACCORDINGLY.