Honorable Richard D. Lamm Governor State of Colorado State Capitol Denver, Colorado 80203
Dear Governor Lamm:
You have requested my opinion on the issues detailed below in preparation for the annual meeting of the State Board of Equalization.
QUESTIONS PRESENTED AND CONCLUSIONS
1. If the state auditor is unable to participate in the meeting of the State Board, would the deputy state auditor have authority to represent the state auditor?
My conclusion is "no."
2. If one Board member is absent, and there is no authority for a deputy or assistant to serve in his or her behalf, what is the result of a two-two tie vote?
My conclusion is that the question fails.
3. May one of the members of the Board give a proxy to another member?
My conclusion is proxy votes are not permitted.
4. If the state auditor is unable to perform his statutory duty under C.R.S. 1973, 39-9-105, may a deputy or assistant perform this certification function?
My conclusion is "yes."
5. Because the State Board will not complete its review by September 15, and because it is not statutorily required to do so before September 27, what is the effect of C.R.S. 1973, 39-5-128?
 My conclusion is that the assessors may wait until the Board approves the abstracts of assessment.
6. What is the effect of H.B. 1025, particularly section 29 thereof, on the State Board order of September 22, 1975?
 My conclusion is the Board's order was not legislatively overruled.
ANALYSIS
Regarding question #1, there is no generally applicable statutory language establishing procedures for state boards when the membership is mandated by the Colorado constitution. The state auditor is made a member of the Board by art. X, § 15. Therefore it becomes necessary to examine the statutory language pertaining to the state auditor.
C.R.S. 1973, 2-3-104 authorizes the state auditor to "appoint such additional professional, technical, clerical, or other employees or contract for such services necessary to perform the function assigned to the state auditor." This is a basic grant of authority to hire staff and outside consultants. It does not appear to be authority to have any such person hired to serve in the state auditor's behalf on the Board.
This analysis is confirmed by the absence of specific language similar to C.R.S. 1973, 24-21-105 pertaining to the secretary of state. This provision allows the secretary of state to "appoint a deputy to act for him if he deems it necessary," and that deputy "shall have full authority to act in all things relating to the office."
Therefore, it is my opinion that no deputy or assistant of the state auditor may serve in his behalf on the State Board.
Regarding question #2, neither the Colorado constitution nor the statutes provide guidelines or direction in deciding internal procedural and parliamentary questions. In these cases,People v. Pitcher, 61 Colo. 149 (1916), MacGinnisv. Denver Co., 90 Colo. 72 (1931), and People v.Hively, 139 Colo. 49 (1959), the courts have indicated that when the Colorado constitution and the statutes are silent, the Board of Equalization is at liberty to adopt its own procedures.
However, it would appear that the Board has not adopted internal procedures or rules.
Robert's Rules of Order and tradition would interpret a tie vote to mean that the issue on which the vote was taken would be defeated.
In the absence of internal rules of procedure, a tie vote on a question before the Board would result in that question failing for lack of a majority.
Regarding question #3, neither the Colorado constitution nor the statutes provide an answer. The Board has not adopted an internal rule on this question.
The better argument would be that no blanket proxies should be allowed. In other words, one member should not be allowed to give a proxy authorizing the attending member to vote as he or she sees fit on all questions arising at that meeting.
A closer question would come on an instructed proxy if a proxy were given to vote a certain way on a certain issue, and the absent member indicated he or she had studied the evidence prior to making a decision.
However, it is my opinion that proxy votes are not now allowed in Board meetings.
Regarding question #4, this function is assigned to the state auditor by statute. It is assigned to him irrespective of his constitutionally-appointed Board membership.
This situation is somewhat analogous to that in People v.Hively, 139 Colo. 49 (1959). The court held that once the county assessor completed his quasi-judicial function of conducting and submitting his assessment roll, his duties were ministerial in nature.
Once the state auditor completes his quasi-judicial function on the State Board, his duties pursuant to C.R.S. 1973, 39-9-105
become ministerial.
A deputy would be allowed to carry out this certification responsibility should the state auditor be unable to do so.
Regarding question #5, C.R.S. 1973, 39-5-128(1) was amended in H.B. 1139 to require the county assessor to certify valuation of assessment no later than September 15. This imposes a virtual impossibility on the Assessors, as the Board will not complete its review and approval until September 24 or 27, in accordance with C.R.S. 1973, 39-9-105(1).
The statute involved, C.R.S. 1973, 39-5-128(1), is clear and unambiguous. But it is unreasonable, and does not synchronize with the rest of the statutory scheme involved.
The only recent similar experience arose in Pueblo County in 1969. The State Board, and then the court, ordered an increase in valuation. The entire process was set back months, with tax bills not going out until the following spring. The Pueblo County Assessor did issue certifications in that year in compliance with the statute, and there were no adjustments thereto even after the increased valuation.
The county assessors have two options: (1) mail the certifications by September 15, and be prepared to mail adjustments should the Board order a change; or (2) wait until the Board has acted.
There are cases which indicate that a statutory date which affects an officer only, and is not for the benefit of notice to the taxpayer, is directory rather than mandatory. People v.Hively, 139 Colo. 49 (1959); Tallon v. VindicatorConsolidated Gold Mining Co., 59 Colo. 316 (1915).
Given the nature of the certification to various officers, the necessity involved, and the administrative costs involved in an additional mailing, it is my opinion that the county assessors may wait until the Board approves the abstracts of assessment.
Regarding question #6, on September 22, 1975 the State Board of Equalization issued a letter to all county assessors. This letter was comprised of two separate and distinct paragraphs.
The first paragraph was an order of the Board to accomplish four specific objectives: (1) to complete a reappraisal of all classes of property by June 1, 1977; (2) to physically audit in detail 25 percent of all personal property schedules annually for four years; (3) to submit all sales to the Division of Property Taxation on a monthly basis; and (4) to discontinue all discounts not permitted under law.
The second paragraph was a notice, rather than an order. It begins "In addition you are hereby notified." This paragraph is a notice of the intention of the Board that it would equalize property valuations according to the guidelines explained in the notice.
H.B. 1025, particularly section 29, does not address any of the four provisions in the Board order. As to the notice of intent to increase valuations, H.B. 1025 is a clear statement of pre-emption by the General Assembly for the year 1976. Where H.B. 1025 conflicts with the Board's notice, the statute will prevail.
H.B. 1025 is silent as to the four provisions of the Board order. That legislation was enacted, however, as a response to the Board's letter of September 22, 1975.
The General Assembly was clearly aware of the Board's order and the Board's notice, even though for most people the two merged into one integrated concept.
The General Assembly chose only to address the notice, and to leave the order intact. This is directly analogous to a legislative confirmation of prior existing rules when the legislature reenacts a statute without changing any of the existing rules. The rules therefore remain in force on the presumption that the legislature was satisfied with them.Bedford v. Colorado Fuel and Iron Corp.,102 Colo. 538 (1938); Schlagel v. Hoelsken, 162 Colo. 142
(1967).
The concept of severability can also be applied to the letter of the Board. Although the notice provision was basically superseded by H.B. 1025, the order itself was not. The four provisions of order each can stand separate and apart from the notice section. Therefore the order itself should be sustained. This is precisely the approach used by the Colorado courts in determining the severability of a statute when one section is invalidated. Covell v. Douglas, 179 Colo. 443 (cert. denied 412 U.S. 952 (1972)); Pike v. School District 11 inEl Paso County, 172 Colo. 413 (1970); People ex rel.Tucker v. Rucker, 5 Colo. 455 (1880).
SUMMARY
At the annual State Board of Equalization meeting, the deputy state auditor may not substitute for the state auditor as a board member. The result of a tie vote by the Board is that the question fails. Proxy votes are not permitted. The deputy state auditor may carry out the state auditor's certification duty. County assessors may certify valuation after the State Board approves the abstracts. The Board's order of September 22, 1975 was not legislatively overruled.
Very truly yours,
 J.D. MacFARLANE Attorney General
TAXATION AND REVENUE
PUBLIC OFFICERS
C.R.S. 1973, 2-3-104
C.R.S. 1973, 24-21-105
C.R.S. 1973, 39-9-105
C.R.S. 1973, 39-5-128(1)
Colo. Const. art. X, § 15
EXECUTIVE BRANCH Governor, Office of Bd. of Equalization LEGISLATIVE BRANCH Auditor, Office of State
At the annual State Board of Equalization meeting, the deputy state auditor may not substitute for the state auditor as a board member. The result of a tie vote by the Board is that the question fails. Proxy votes are not permitted. The deputy state auditor may carry out the state auditor's certification duty. County assessors may certify valuation after the State Board approves the abstracts. The Board's order of September 22, 1975 was not legislatively overruled.