## UNION PAC. R. CO. v. BOARD OF COMMISSIONERS, WELD COUNTY. DENVER TRAMWAY CORPORATION v. CITY AND COUNTY OF DENVER. ATCHISON, T. & S. F. RY. v. BOARD OF COMMISSIONERS, PROWERS COUNTY.

Circuit Court of Appeals, Tenth Circuit.
October 17, 1929.

Rehearing Denied December 11, 1929.

Nos. 96, 97, 123.

C. C. Dorsey, of Denver, Colo. (N. H. Loomis, of Omaha, Neb., and Gerald Hughes, of Denver, Colo., on the brief), for appellants Union Pacific R. Co. and Denver Tramway Corporation.

Erl H. Ellis, of Denver, Colo. (W. W. Grant, Jr., Morrison Shafroth, and Henry W. Toll, all of Denver, Colo., on the brief), for appellant A. T. & S. F. Ry. Co.

Wm. R. Kelly, of Greeley, Colo., and John R. Wolff, of Boulder, Colo. (Thos. H. Gibson and B. F. Reed, both of Denver, Colo., Robt. E. Winbourn, Atty. Gen., and Chas. Roach, Deputy Atty. Gen., on the brief), for appellees.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge. These are actions at law under section 7447, C. L. Colo. 1921, which authorizes the recovery from a county, after payment, of any tax or portion thereof found to be erroneous or illegal.

Jurisdiction of the federal court is invoked in each case on the ground of diversity of citizenship and on the claim that certain orders of the State Board of Equalization, increasing the assessment of the property of plaintiffs, amounted to a deprivation of property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States.

The plaintiffs in causes numbered 96 and 123, respectively; own systems of railroad located partly in the state of Colorado, and the plaintiff in cause numbered 97 owns the street railway system located in the city and county of Denver and counties adjacent thereto.

The causes were disposed of below upon complaints and demurrers. The complaints

are substantially the same in all three cases, and, in addition to the jurisdictional facts, alleged the following: That, for the year 1927, each plaintiff made a return of all its various kinds, classes and items of property according to law; that, in due course, after hearings, the Colorado Tax Commission made assessments of the property of the plaintiffs for taxation purposes; that on Saturday, October 15, 1927, same being the Saturday preceding the third Monday in October of such year, the State Board of Equalization made an order which increased the valuation of the Union Pacific Railroad Company, for assessment purposes, $2,000 per mile over and above the valuation placed thereon by the Tax Commission; and made an order which raised the valuation of the Atchison, Topeka & Santa Fé Railway Company, for assessment purposes, $2,000 per mile over and above the valuation placed thereon by the Tax Commission; and made an order which increased the valuation of the Denver Tramway Corporation, for assessment purposes, $250,000 above the valuation placed thereon by the Tax Commission; that the plaintiffs had no knowledge of such orders until after the adjournment of the statutory session of such State Board of Equalization; that such attempted increases in valuation were not based upon any reference to or study of the relevant facts, and that the actions of the State Board of Equalization were arbitrary, capricious, unreasonable and oppressive; and that each of the plaintiffs, involuntarily and under protest, paid the 1927 taxes upon such increased assessments to the proper authority. The complaints pray for the recovery of the taxes thus paid.

In each case, the trial court sustained the demurrers to the complaints. The plaintiffs elected not to further plead, and judgments of dismissal were entered. These are appeals therefrom.

The primary question presented is the construction of section 15 of article 10 of the Colorado Constitution, which defines the powers of the State and County Boards of Equalization. This section reads as follows:

"Boards of equalization—Duties.

"There shall be a board of equalization for the state, consisting of the governor, state auditor, state treasurer, secretary of state and attorney general. The duty of the said board of equalization shall be to adjust, equalize, *raise or lower* the valuation of real and personal property *of* the several counties of the state, *and the valuation of any item or items of the various classes of such property.*

"There shall be in each county of this state a county board of equalization, consisting of the board of county commissioners of said county. The duty of the county board of equalization shall be to adjust, equalize, *raise or lower* the valuation of real and personal property within their respective counties, *subject to revision, change and amendment by the state board of equalization. The state board of equalization and the county board of equalization shall equalize to the end that all taxable property in the state shall be assessed at its full cash value* and also perform such other duties as may be prescribed by law; *Provided, however, that the state board of equalization shall have no power of original assessment."*

The italics are ours and indicate changes resulting from an amendment, proposed by the 1913 session of the Colorado Legislature, and adopted at the general election held November 3, 1914.

We believe a consideration of the provisions of the Colorado statutes on taxation will disclose the policy of that state with reference to assessment of property and will throw light upon this inquiry.

Section 7284, C. L. Colo. 1921, provides that the Tax Commission shall meet on the first Monday in April of each year, and from day to day thereafter until its business is finished, and shall assess, at full cash value, all property of public utilities in the state of Colorado. This section also provides that the Tax Commission shall certify such assessments to the county assessors and the county clerks on or before June 15th of each year.

Section 7294, C. L. Colo. 1921, provides that every railway company shall furnish to the Tax Commission, between March first and April first of each year, a detailed and sworn statement of the several classes of its real and personal property.

Section 7307, C. L. Colo. 1921, provides that the Tax Commission shall afford an opportunity to any public utility or any taxpayer to appear before the Tax Commission and submit to it any facts which may tend to inform the Tax Commission as to the fair value of such property.

Section 7287, C. L. Colo. 1921, provides: (1) That, on or before August 25th of each year, any public utility or any Board of County Commissioners of any county may file a complaint with the Tax Commission if it believes the assessment certified by the Tax Commission is illegal, erroneous or not uniform, or that the amount of such assessment has not been justly distributed between the counties of the state; (2) that adequate notice shall be given to all interested parties; (3) that hearings shall be held between the second Monday in September and the first

Monday in October, and that the Tax Commission must render its decision in writing and transmit a copy thereof to all interested parties on or before October first; and (4) that the Tax Commission shall place the property assessed by it on an equality with the assessment of other property.

Under the Statutes of Colorado (sections 7221 to 7269, inc., C. L. Colo. 1921), property other than public utility property is assessed by the county assessors of the several counties.

Section 7291, C. L. Colo. 1921, provides that the assessor, prior to the first Tuesday in August of each year, shall mail to each taxpayer, whose property has been assessed at a valuation other than that given in the schedule filed by such taxpayer, a statement of such change in valuation and shall give notice, by publication in at least one issue of a paper published in the county seat, that on a day named he will sit to hear any and all objections to the assessment roll, and that the assessor shall continue such hearing from day to day until all grievances shall have been heard but that the hearing shall be completed before the first day of the initial meeting of the county board of equalization.

Section 7458, C. L. Colo. 1921, provides: (1) That the County Board of Equalization shall hold two regular meetings at the office of the county clerk at the county seat, the first commencing on the first Tuesday in September and continuing not less than three nor more than ten consecutive days, and the second meeting commencing on the third Tuesday in September and continuing not less than three nor more than ten consecutive days; (2) that if, at the first meeting, any changes are made or directed to be made by such board, in the assessment of any person or persons, the county clerk shall mail to each of such persons written notice of such change, and that such board shall, at its second meeting, sit to hear the complaints of those dissatisfied with such changes and to adjust the assessment so as to equalize the same among the several taxpayers of the county; and (3) that if the meeting shall prove too short for the consideration of all cases for adjustment, such board may, by order, extend the time of such meetings to not to exceed ten additional days.

It will thus be seen that through two independent agencies, one, the county officials as to property generally, and, the other, the Tax Commission as to public utility property, complete provision is made for (1) the assessment of all the property of the state, (2) an opportunity for a taxpayer to file complaints with reference to the assessment of his property, (3) notice of such complaints to the parties affected, and (4) a hearing thereon. Before the first day of the meeting of the State Board of Equalization, such hearings have been held and such assessments completed by such tax assessing agencies.

Section 7292, C. L. Colo. 1921, provides that an appeal may be taken, on or before the first Monday following such assessment, from the decision of the assessor to the district court or county court of the county wherein the property is assessed, where valuation exceeds $7,500.

Section 7293, C. L. Colo. 1921, provides, where the valuation is under $7,500, first, for an appeal, on or before the first Monday in January following such assessment, from the decision of the assessor to the county commissioners of the county wherein the property is situated, and, second, for an appeal from the decision of the board of county commissioners to the district court of the county wherein such property is assessed.

Section 7287, C. L. Colo. (Laws 1913, p. 529, § 8), provides that an appeal may be taken, on or before the first Monday in January following such assessment, from the decision of the Tax Commission rendered at its hearings held between the second Monday in September and October first of each year, to the district court or county court of the county wherein the property assessed is located.

Section 7311, C. L. Colo. 1921, provides that each assessor shall make out and transmit to the Tax Commission an abstract stating in detail the following facts with reference to the assessment in his county:

"First—The number of acres and the total assessed valuation of all grazing lands.

"Second—The number of acres and the total assessed valuation of all agricultural lands.

"Third—The number of acres and the total assessed valuation of all coal lands and the annual output of all coal mines.

"Fourth—The total assessed valuation of town and city lots, excluding improvements thereon.

"Fifth—The total assessed valuation of all improvements on town and city lots.

"Sixth—The total assessed valuation of all improvements on agricultural lands.

"Seventh—The total assessed valuation of all improvements on grazing lands, and upon public lands separately.

"Eighth—The total assessed valuation of all personal property of every description.

"Ninth—The total assessed valuation of all franchises valued by him.

"Tenth—The total assessed valuation of all shares in banking corporations.

"Eleventh—The assessed valuation of all franchises, land, improvements and personal property, tangible and intangible, of all street car companies, gas companies, electric light companies, water companies, oil companies, traction companies, telegraph companies, coal companies and railroad companies, required by law to be assessed by him, giving the totals thereof.

"Twelfth—The value of all merchandise in said county.

"Thirteenth—The number and value of all cattle, horses, sheep, hogs, asses, mules and other domestic animals, stating in each class separately with respect to number and valuation.

"Fourteenth—The capital employed in manufacturing, milling, reduction, printing, publishing and other similar occupations.

"Fifteenth—The value of all precious metal mines, and mining property, stating separately the value of such mines and of the improvements on all such mining claims, the gross and net value of all ores or valuable metals extracted from such mining property."

This section was adopted by the 1913 Legislature, which submitted the proposed amendment to section 15, art. 10 of the Constitution. (See Laws 1913, pp. 536–538, § 4.)

Section 7463, C. L. Colo. 1921, reads as follows:

"Meeting of State Board of Equalization to equalize assessment.

"The State Board of Equalization shall sit on the first Monday of October in each year, at the executive office, for the purpose of examining, adjusting and equalizing the assessments in the several counties of the state."

Section 7465, C. L. Colo. 1921, reads as follows:

"Equalization Completed—Report—Failure to sit.

"On or before the third Monday of October in each year the board shall complete the equalization and the State Auditor shall transmit to the clerk of each county a statement of the changes, if any, which have been made in the assessments, and the rate of tax which is to be levied and collected within his county, which shall not exceed the limit permitted by the Constitution. * * * "

█ While the 1911 act (Laws 1911, p. 625), which created the Colorado Tax Commission, provided (section 1) that the Tax Commission "shall exercise the powers and perform the duties imposed upon it by the provisions of this act subject to the direction and approval of the state board of equalization" by an amendment to section 40 of such Act, adopted in 1913 (Laws 1913, p. 525, § 1, C. L. Colo. 1921, § 7361), it was provided:

"All statutory powers, duties and privileges heretofore exercised by the State Board of Equalization are hereby conferred upon the Colorado Tax Commission and in addition thereto it shall be the duty of the Colorado Tax Commission to exercise all powers of original assessment of all public utility corporations as herein defined."

In People v. Pitcher, 56 Colo. 343, 382, 383, 138 P. 509, 523, these statutes were construed and their effect determined as follows:

"It is claimed, however, that as section 1 of the act requires the Tax Commission to exercise its powers and perform its duties, subject to the direction and approval of the State Board of Equalization, and section 33 thereof requires the latter body to examine the abstracts of assessment as submitted by the Tax Commission, and 'make a record of its action on the abstract of each county and certify the same to the county assessor,' etc., the Tax Commission is only an agency of the State Board of Equalization. We are clearly of the opinion that the language in relation to that which the State Board of Equalization shall do, and its supervisory powers over the Tax Commission, pertains to the exercise by the former body of its constitutional power to adjust and equalize. But, be that as it may, the force of the claim is deflected by the fact that the act of 1913, p. 525, amending the act of 1911, purports to confer upon the Tax Commission all statutory powers, duties and privileges theretofore exercised by the State Board of Equalization."

It follows that the State Board of Equalization has no power either to make or supervise the making of assessments of public utility property and that its functions are limited to its constitutional power of equalization.

█ Counsel for the plaintiffs contend: (1) That the order of the State Board of Equalization amounted to the exercise of the power of original assessment, which, as to their property, was exclusively vested in the Tax Commission, and that such orders were wholly without authority and void. (2) That if the State Constitution authorized the State Board of Equalization to make such orders, neither it nor the statutes of Colorado made any adequate provision for notice and hearing to the taxpayer affected, and that the orders deprived plaintiffs of their property without due process of law. (3) That if the state statutes, designating the time and place of the stated meeting of the Board of Equalization, were sufficient notice, in this particular case no hearing was permitted and the orders are therefore void.

789

On the other hand, counsel for the defendants contend: (1) That the State Board of Equalization was exercising the power of equalization, in raising the assessed value of plaintiffs' property; that it was authorized to do so under the provisions of section 15, art. 10, of the Constitution, as amended, and that the orders were within the power of the board. (2) That specific notice to each individual taxpayer is not necessary and that the statutory notice of the time and place of the meeting of the board is sufficient.

Counsel for the defendants rely principally upon the decision of the Supreme Court in People v. Pitcher, 61 Colo. 149, 156 P. 812, 818, Ann. Cas. 1918D, 1185. That was an action to enforce, by mandamus, an order of the State Board of Equalization raising the assessed valuation upon the following classes and items of classes of property in the city and county of Denver: Improved land, improvements on improved land, town and city lots, improvements on lots, animals, automobiles, musical instruments, clocks, watches, harness, machinery and equipment, money invested in merchandise, capital in manufactures, jewelry, household property, libraries, furniture and fixtures and all other property. The Supreme Court, in construing section 15, art. 10, of the Constitution, there said:

"Under this constitutional amendment it is clear that the state board of equalization is the final arbiter in fixing values upon property which has been originally assessed for the purposes of raising public revenue. It is expressly made its duty to adjust, equalize, raise, or lower the valuation of real and personal property of the several counties of the state and the valuation of any item or items of the various classes of such property. It will be observed that both the constitutional and statutory duties previously existing in the several county boards of equalization, whereby they equalized the assessments in their respective counties as returned by the county assessors, have now become constitutional duties; but their action in that regard is 'subject to revision, change and amendment by the state board of equalization.' Moreover, the state board of equalization and the county board of equalization are expressly required to equalize 'to the end that all taxable property in the state shall be assessed at its full cash value.' Formerly the county board of equalization could equalize only between the taxpayers of the county, and the state board of equalization could equalize only to the end that the ratio between the counties should be just. The county board of equalization is now expressly authorized to raise or lower the valuation of any property, and the state

board is not only authorized to 'revise, change and amend the action of the county board,' but also to raise or lower 'any item or items of the various classes' of such property. Clearly, items of a class may include the whole class, and, if a board is given power to act with reference to any item of a class or items of classes, it possesses the power to act with reference to the whole class. The conclusion is therefore inevitable that the state board of equalization may raise the assessment upon property, or any part, parcel, or class thereof which has been originally assessed for the year by any of the agencies authorized to make such assessments, to its full cash value, since, otherwise, it has not performed its constitutional duty."

The language of this opinion necessarily must be construed in the light of the particular facts before the court. By the order, involved in the case of People v. Pitcher, the State Board of Equalization did not undertake to single out and raise the assessed value of all the property of an individual taxpayer. On the contrary, that order dealt with classes and sub-classes of property and affected all the taxpayers owning property in the county coming within the classes or sub-classes designated in the order.

It will be noted that the Constitution uses the language "raise or lower the valuation of real and personal property of the several counties of the state, and the valuation of any item or items of the various classes of such property." Manifestly, an order of the State Board might affect real property or personal property or any class of real property or any class of personal property or any item of a class of personal property or any item of a class of real property.

It will be noted that the language is not "item of property" but "item of a class of property." We think the word "item" is here used in the sense of sub-class. It seems to us that any other construction of this section of the Constitution would lead to an absurd result. The purpose is to effect equalization by bringing the assessment of all property up to 100% of its actual value. If the constitutional amendment should be construed to mean that the State Board of Equalization should accomplish this purpose by examining the assessment of each individual taxpayer and bringing the assessment of each taxpayer up to 100% of the actual value of the property, an impossible task would be imposed upon the State Board, which, by the statutes of the state, must complete its duties within the period of 15 days, including two Sundays. If the Board is required to examine the assessment of one taxpayer and

bring it up to 100% of the actual value of the property, then the same duty devolves upon it as to the assessments of all taxpayers in the state. It might be entirely possible for the Board to determine that range cattle in one county of the state were assessed at 40% of their actual value; that range cattle in another county of the state were assessed at 60% of their actual value, and in still another county that range cattle were assessed at 80% of their actual value, and enter an order that the value of range cattle in each of such counties should be raised a sufficient per cent. to bring them up to 100% of their actual value. But it would be manifestly impossible and impractical for the State Board of Equalization to undertake to examine the assessment of each owner of range cattle in the several counties of the state and determine whether they were assessed at 100% of their actual value.

Furthermore, a taxpayer, whose property might be affected by an order of the State Board, is entitled to a hearing and it would be obviously impossible for the State Board to hear all the taxpayers of the state.

Again, valuing the property of a particular taxpayer, as a whole, is in its essence assessment of such taxpayer's property. While dealing with, and raising or lowering the value of classes or sub-classes of property, without reference to ownership, within a designated territorial limit, is in its essence equalization. Assessment is personal, while equalization is impersonal. It is unreasonable to believe that the people of Colorado, who, through their Legislature, had provided with meticulous care for notice and opportunity to complain and be heard as to individual assessments, intended, by the amendment to section 15, art. 10, of the Constitution, to provide that the State Board of Equalization, without notice other than the statutory notice of the stated meeting of the Board and without a hearing, might deal with the assessment of an individual taxpayer, as such, and raise or lower the total amount of such assessment as fixed by the county assessor or tax commission, as the case might be.

It will be noted that section 7311, C. L. Colo. 1921, the substance of which is above set out and which was adopted by the same Legislature which submitted the amendment of section 15, art. 10, of the Constitution, makes provision for bringing before the State Board of Equalization an abstract of the total assessment in each county of each class and sub-class of property. On the other hand, the statutes of Colorado make no provision whatever for bringing individual assessments before the State Board of Equalization.

Furthermore, the same Legislature which proposed the constitutional amendment, made no change in the provisions of sections 7292 and 7293, C. L. Colo., which provide that a taxpayer may appeal to the courts of the state from the decision of the assessor finally fixing the assessment of the property of such taxpayer; and by section 7287, C. L. Colo., it provided for an appeal to the courts of the state from the decision of the Tax Commission finally fixing the assessment of public utilities. These statutes provide that such appeals may be prosecuted on or before the first Monday in January after the making of such assessment. It would be an unusual situation if a court and a state administrative board were both to deal with the correctness of a specific assessment of an individual taxpayer at the same time.

The foregoing is strongly indicative that the Legislature, which proposed the amendment, did not intend that the State Board of Equalization should deal with the total assessment of individual taxpayers of the state.

Much emphasis is placed upon the following language of the Constitution, "and to the end that all taxable property shall be assessed at its full cash value." This, indeed, is the standard which the Board of Equalization must follow: It is the end to be attained. But, in attaining that end, the State Board of Equalization, by the specific language of the Constitution, is enjoined to equalize, not by raising or lowering the total assessment of an individual taxpayer, but by raising or lowering the valuation of the two principal classes of property, namely, real and personal; or the valuation of any class thereof or of any item or sub-class of such classes.

While the broad language of the Supreme Court of Colorado, in People v. Pitcher, supra, tends to support the contention of the defendants, the holding of the court in that case went only to the extent of sustaining an order which raised the valuation of classes and sub-classes of property, and we do not think the court, by the language there employed, intended to hold that the State Board of Equalization, under its constitutional power, was authorized and required to examine into the valuation of the property of individual taxpayers.

For the reasons stated, it seems to us that the logical and reasonable construction to be placed upon this constitutional provision is that the State Board of Equalization may, by its order, raise or lower only the value of real property or personal property, or of any class of real or personal property or of any sub-class of the several classes of such proper-

ty, just as the State Board did in the Pitcher Case.

It follows, therefore, that the orders complained of were not within the power of the State Board of Equalization and were void.

If the constitutional provision, as amended, should be construed to empower the State Board of Equalization to examine the assessments of individual taxpayers and to raise them to what the Board finds to be 100% of the actual value of the property, because of the character of such an action, a grave question is presented under the Fourteenth Amendment to the Constitution of the United States, since neither the Constitution of Colorado nor the taxing statutes make any adequate provision for notice and opportunity to be heard concerning the raising of an individual taxpayer's assessment. The statutory notice of the stated meeting of the State Board of Equalization refers solely to equalization and not to assessment. Cooley on Taxation (4th Ed.) vol. 3, § 1123. However, in view of the conclusion we have reached as to the true construction of the constitutional provision, we find it unnecessary to pass upon this question.

The judgments are reversed and the causes remanded with instructions to set aside the orders of dismissal, overrule the demurrers and proceed in accordance with this opinion.