Craig J. REECE, Plaintiff
and Appellant,

v.

BOARD OF REGENTS OF the STATE
OF UTAH and the University of Utah,
Defendants and Respondents.

No. 19600.

Supreme Court of Utah.

July 29, 1987.

Rehearing Denied Nov. 25, 1987.

Craig J. Reece, pro se.

David L. Wilkinson, Douglas C. Richards, and William L. Walker, Salt Lake City, for defendants and respondents.

HOWE, Justice:

Plaintiff Craig J. Reece brought this suit against defendants Utah Board of Regents (Board) and University of Utah (University) contending that the procedures followed in implementing rent increases at University Village, a student housing complex where he was a tenant, and the use of money from the bond reserve fund to finance construction of a maintenance building denied him his right to due process and equal protection of the law. The district court dismissed the complaint against the Board and granted summary judgment to the University. Plaintiff appeals.

Plaintiff asserts that the rent increases were improper because (1) the Board of Regents cannot delegate the authority to set rents, (2) if such authority can be delegated, it was not properly done in this instance, and (3) the procedures used to implement the rent increase denied him due process as guaranteed by both the federal and state constitutions. U.S. Const. amend. XIV; Utah Const. art. I, § 7. Utah Code Ann. § 53-48-2(2) (1981) provides: "The purpose of this act is to vest in a single board, the state board of regents, the power to govern the state system of higher education consistent with the policies adopted under section 53-2-12 and in its discretion to delegate certain powers to institutional councils." Plaintiff claims that this statute does not authorize the delegation of the power to set rents. He relies on Utah Code Ann. § 53-38-1, which in relevant part provides: "The state board of higher education on behalf of the University of Utah, ... is authorized and empowered ... (4) to equip, furnish, maintain and operate such projects and buildings. For the use and availability of the foregoing, the board may impose and collect rents...."

■ Section 53-38-1 clearly gives the Board the authority to collect rents. However, nothing in it would prohibit the delegation of this power. Section 53-48-2(2) does not specifically designate which powers the Board is allowed to delegate, but leaves that to its discretion. We find no statutory restriction on the delegation of

the power to impose and collect rents, nor can we say that such delegation amounts to an abuse of discretion by the Board.

Plaintiff next contends that the Board has not actually delegated the power to set rents. He argues that the Board, in May 1980, adopted a resolution requesting the Commissioner of Higher Education to draft an amendment to the Board's auxiliary policy to provide that the Board need review and approve student housing charges only when the housing is not self-supporting. But, plaintiff claims, there is no record evidence that the proposed amendment was ever adopted by the Board.

■ Regardless of whether an amendment to the Board's auxiliary policy was ever adopted, the authority to set rents was given to the University in the bond resolution authorizing the issuance of the revenue bonds used to finance the construction of University Village. Section 5.05 of that resolution states:

That so long as the Student Housing System Revenue Bonds remain outstanding, *the University shall* and hereby agrees that it will *establish and maintain such* parietal rules, rates, *charges and fees for the use and occupancy of the Housing System* and the facilities afforded thereby *as may be necessary,* together with the pledged Debt Service Grants and the Land Grant Revenues, *to (a) assure continuous operation* of said facilities, and (b) *provide* (1) *payment of the costs* of the Current Expenses of the Housing System, (2) *all payments hereinabove required to be made into the System Bond Fund,* (3) *the required reserve* therefor, and (4) *the System Repair and Replacement Reserve Account;* and that it will permit no free use or occupancy of the Housing System facilities.

(Emphasis added.) Thus, the authority to set rents and user fees for University Village housing was properly delegated by the Board of Regents when it adopted the bond resolution.

■ Plaintiff's claim that the procedures followed in implementing rent increases de-

nied him due process of law is without merit. Assuming, *arguendo*, that we could find a property interest in plaintiff's rental rate or lease that would warrant the protection afforded by due process, we find that the procedures in place afforded plaintiff adequate notice and an opportunity to be heard, thereby affording him due process under both the state and federal provisions.

Plaintiff was a month-to-month tenant. His rental agreement provided: "(1) Rent ... (d) Rental rates may be changed. Sixty (60) days['] notice will be provided to the residents in general by the University...." Plaintiff received a letter more than 60 days prior to the effective date of the increases in the basic rent informing him of the need for the raise and the amount. A procedure was in place whereby questions or problems could be directed to the student housing representative. Either the tenant or the student housing representative could address the Institutional Council, which must approve all rent increases. Notice of the council meetings is publicly posted. Thus the procedure used to implement the rent increases provides both notice and an opportunity to be heard, thereby affording plaintiff the essential elements required by due process. *See Wells v. Children's Aid Society of Utah*, 681 P.2d 199 (Utah 1984); *cf. Nelson v. Jacobsen*, 669 P.2d 1207 (Utah 1983).

Plaintiff complains that the notice he received was defective because it did not contain the time and date of the council meeting where the increases would be considered. Ideally, the notice would contain such information. However, the essence of due process is *fair* procedure, which does not necessarily require "ideal" notice or perfect procedure. *See Lamm v. Barber*, 565 P.2d 538 (Colo.1977). The notice plaintiff received initially was supplemented by the procedures in place to handle questions or problems through the housing representative, as well as by the public notice of the meetings of the Institutional Council. Thus the notice plaintiff received, viewed in context, was adequate to inform him of the proposed changes, the reasons necessitating the changes, and where he could address his questions and comments.

■ Plaintiff next contends that the use of funds on reserve in the bond accounts to finance the construction of a maintenance building was improper and was not authorized by the Board. The bond resolution provides that all revenues from operation of the housing system shall be deposited in the Systems Revenue account. This account is used to pay current expenses of the housing system. Funds remaining after expenses are met are deposited in the System Net Revenue account and Income Fund account (SNRIFA). Funds are transferred from SNRIFA to the System Bond Fund to ensure sufficient funds to pay the principal and interest payments on the bonds. After principal and interest payments are made, $113,050 may be transferred each year to the System Repair and Replacement account if the account balance is under $2,263,500. Any funds remaining in SNRIFA after these required transfers are made may be used to:

(1) make advance payments on student housing systems revenue bonds;

(2) to apply or accumulate a reserve for ... construction, equipping or furnishing additional housing ... or *related auxiliary facilities* ... or

(3) for any lawful purpose.

(Quoting from § 4.09 of the bond resolution.) Thus, the bond resolution clearly provides for funds generated by the housing system to be used in constructing related auxiliary facilities such as the maintenance building plaintiff complains of.

■ Plaintiff's argument that the construction of the building was not properly approved by the Board is unpersuasive. Section 53–48–2(2) allows the Board to delegate certain powers to the institutional councils of the various institutions under its supervision. Following the procedures outlined in Utah Code Ann. § 63–46–12 (1953),[1] the Board properly delegated to the University of Utah Institutional Council the

---

**1.** This statute, which was in effect at the time of the proceedings in the trial court, has been repealed by the passage of chapter 46a, 1985 Utah Laws ch. 158, § 2.

power to approve new construction up to $1,000,000. The maintenance building was built for $360,817 and was properly approved by the Institutional Council.

Plaintiff also contends that the trial court erred in striking his motions to compel discovery and his second motion for partial summary judgment. Six days before the hearing on plaintiff's first motion for partial summary judgment, the Board's motion to dismiss, and the University's motion for summary judgment, plaintiff served on the defendants requests for admission and production of documents. At the time of the hearing, defendants, who had thirty days to respond,[2] had not yet responded to the discovery requests. Rather than move for a continuance, plaintiff proceeded with the hearing. The judge ruled on the motions before him, granting the Board's motion to dismiss and the University's motion for summary judgment and denying plaintiff's motion for partial summary judgment. The judge acknowledged the outstanding discovery requests and concluded that his order would completely dispose of plaintiff's complaint. The judge signed his handwritten order a week after the hearing and sent copies to the parties. A formal typewritten order was prepared by counsel for defendants and signed by the judge on October 3, 1983. After entry of the judge's handwritten order but prior to the signing of the formal typewritten order, plaintiff again moved for partial summary judgment and for enforcement of his discovery requests. The judge struck the motions, stating that no practical purpose would be served by responding to discovery after a motion disposing of the case had been granted.

Plaintiff could have preserved his right to discovery by seeking a continuance of the hearing on his first motion; however, no request for a continuance appears in the record. We agree with the trial judge that once an order disposing of the case was entered, no purpose would be served by defendants' responding to outstanding requests for discovery. The trial

court did not err in striking plaintiff's motions.

The trial court's rulings are affirmed.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, Associate C.J., concurs in the result.